THE MONONGALIA COUNTY
DEVELOPMENT AUTHORITY,

      Plaintiff,

v.                                          Civil Action No. 1:18CV22
                                                    (STAMP)

THE TRAVELER'S INDEMNITY
COMPANY OF CONNECTICUT,
THE TRAVELER'S
INDEMNITY COMPANY,
THE PHOENIX INSURANCE COMPANY
and THE TRAVELER'S INSURANCE
COMPANY,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. Background

The plaintiff, The Monongalia County Development Authority ("MCDA"), originally filed its complaint in the Circuit Court of Monongalia County, West Virginia. ECF No. 1-2. The defendants, The Phoenix Insurance Company ("Phoenix") and The Travelers Insurance Company ("Travelers"), timely removed the civil action to this Court.[1] ECF No. 1. The plaintiff alleges that it was provided insurance under a policy for the Monongalia County Commission ("County Commission") sold and serviced by the Dyer

---

[1]At oral argument, on March 22, 2019, counsel for the plaintiff indicated that it is his understanding that "Phoenix is a wholly owned subsidiary of Travelers, or at least a related company, and they jointly market and serve insurance." Counsel for the defendants did not object to this characterization, and stated "Phoenix is a subsidiary of the Travelers umbrella."

Insurance Group ("Dyer").  ECF No. 1-2 at 7.  MCDA was also allegedly insured under a separate Travelers policy.  Id.

SouthCo Development LLC ("SouthCo") had previously filed a civil action against MCDA.  Id.  The plaintiff contends that the County Commission, on behalf of MCDA filed a claim under Travelers Policy #ZLP-14T25627 seeking indemnification and defense from defendants in the SouthCo action.  Id. at 8.  The plaintiff further alleges that Phoenix summarily denied coverage under that policy, and transferred the claim to Travelers Policy #680-241L2418.  Id. Travelers purportedly denied the claim stating that the alleged injury did not fall under the coverage, and that Phoenix later provided a detailed denial of coverage under Travelers Policy #ZLP-14T25627.  Id.  Phoenix allegedly determined that MCDA was not entitled to insurance coverage since it was not a "board" of the County Commission.  Id.  The plaintiff alleges claims based on breach of contract, unfair trade practices in violation of West Virginia Code § 33-11-1, et seq., bad faith, and promissory estoppel.  Id. at 8-13.  The plaintiff seeks damages, interest, attorneys' fees, and all costs of the action.  Id. at 13.

On October 26, 2018, the defendants filed a motion for summary judgment.  ECF No. 35.  The defendants assert that the sole issue in this case is whether MCDA would constitute a "board" and, therefore, would be insured under the County Commission's policy with Phoenix.  ECF No. 36 at 10.  The defendants cite the insurance contract language which defines "board" as "any board, commission,

2

or other governmental unit or department that: (1) is under your jurisdiction; and (2) is funded and operated as part of your total operating budget." Id. at 11. The defendants conclude that MCDA is not an insured under the Public Entity Management Liability Coverage Form of Phoenix's policy insuring the County Commission, because it is not under the County Commission's jurisdiction, and is not funded and operated as part of the County Commission's total operating budget. Id. For support that MCDA is a public corporation which is not under the jurisdiction or control of the County Commission, but rather is an autonomous public corporation managed and controlled by its board of members, defendants cite the following: the enabling statute for the Development Authority, W. Va. Code § 7-21-1, et seq., the Development Authority Bylaws, the County Commission Jurisdictional Statute, W. Va. Code § 7-1-3, et seq., and the testimony of MCDA's corporate designee. Id. at 11-15. Moreover, defendants assert that the doctrine of estoppel cannot extend insurance coverage since there was no representation of coverage made by Phoenix or its agent. Id. at 18-23. Defendants further contend that the terms set forth in the SouthCo complaint are excluded by the terms of Phoenix's policy insuring the County Commission.[2] Id. at 23-34.

---

[2]After the defendants filed a motion for summary judgment (ECF No. 35), counsel for the plaintiff and counsel for the defendants filed a stipulated dismissal without prejudice of The Traveler's Insurance Company of Connecticut and The Traveler's Insurance Company as parties in the above-styled action. ECF No. 7. This Court approved that stipulation. ECF No. 39.

Plaintiff filed a response in opposition to defendants' motion for summary judgment. ECF No. 41. In its response to defendants' motion for summary judgment, plaintiff asserts that there are factual issues that preclude ruling on coverage, namely that defendants' representatives were found to have affirmatively stated to the County Commission that MCDA was covered by the policy. Id. at 3-5. Plaintiff further contends that MCDA falls under the County Commission's jurisdiction, arguing, among other things, that: (1) MCDA is a creation of the County Commission, (2) that the County Commission is the only entity that is capable of appointing or removing members from MCDA's Board of Directors, and (3) that certain expenditures of development funds require the approval of the County Commission. Id. at 6. Next, plaintiff argues that with regards to funding, there is no policy provision requiring that the entirety of funds spent by MCDA come from the County Commission or a provision that defines funding. Id. at 8. Referencing the County Commission's annual budget, plaintiff asserts that the County Commission provides funding to MCDA in a variety of ways. Id. at 8-9. Plaintiff further contends that defendants have waived the right to raise other policy exclusions, because they failed to list the exclusions in its declination of coverage letter that found MCDA not insured under the County Commission's policy. Id. at 13-16. Lastly, plaintiff asserts that, with respect to the underlying claims in the SouthCo civil action, the negligence

claims are distinct enough from the contract claims under West Virginia law to allow for coverage. Id. at 18.

Defendants then filed a reply to plaintiff's response in opposition to defendants' motion for summary judgment. ECF No. 42. In their reply, defendants state that there are no material issues of fact precluding summary judgment on MCDA's reasonable expectations or estoppel claims for coverage. Id. at 2. Specifically, defendants state that MCDA failed to provide proof of a representation, to offer any evidence of prejudice, and that it had been issued a separate policy of insurance through Travelers from 2001 to 2016, in which it had property coverage and general liability coverage on a building that it owned and out of which it operated. Id. at 2-5. Next, defendants reiterate that MCDA is not under the jurisdiction of the County Commission and is not funded and operated as part of the County Commission's total operating budget. Id. at 6. Specifically, defendants indicate that MCDA failed to address: (1) the County Commission's jurisdictional statute that fails to specifically list MCDA; (2) MCDA's broad range of powers granted by statute; (3) that MCDA is a legal entity being a public corporation by statute; and (4) that the County Commission does not have the power to manage and control MCDA. Id. at 7-8. Moreover, defendants state that plaintiff fails to explain how MCDA is operated out of the County Commission, and to provide sufficient evidence of funding that it received that enables it to function. Id. at 8. Defendants further argue that principles of

contract interpretation do not support a finding that MCDA is insured under the County Commission's policy. Id. at 10. In response to plaintiff's argument that defendants waived their right to raise other policy exclusions, defendants note that Phoenix determined that MCDA was not an insured and so those other potential exclusions were moot and that MCDA's attempt to create coverage by an implied waiver runs against law set forth in Syl. Pt. 6, Potesta v. United States Fid. & Guar. Co., 202 W. Va. 308, 504 S.E.2d 135 (1998), which held that an implied waiver could not be used to extend insurance coverage beyond the terms of the insurance contract. Id. at 11. Lastly, defendants assert that the underlying claims in the SouthCo civil action are barred by breach of contract, fraudulent conduct, and unlawful personal gains policy exclusions. Id. at 11-13.

Plaintiff also filed a motion and memorandum in support of summary judgment on the issue of insurance coverage. ECF Nos. 37 and 38. First, plaintiff asserts that insurance coverage was denied based upon an erroneous belief that MCDA is not funded or under the jurisdiction of the County Commission. ECF No. 38 at 4. With respect to the jurisdictional issue, plaintiff asserts that the County Commission created MCDA, is the sole entity capable of appointing and removing members of the Board of Directors of MCDA, and that certain expenditures of development funds require the explicit approval of the County Commission. Id. at 5-6. With respect to the funding issue, plaintiff contends that MCDA is

funded by the County Commission in a variety of ways (i.e. grants of real estate and the partial payment of the salary of MCDA's director).  Id. at 9-12.  Plaintiff also references the County Commission's annual budget to support its conclusion.  Id. at 13. Plaintiff then states that coverage exists even if MCDA is not a "board" under the policy, because MCDA and the County Commission reasonably expected insurance coverage.  Id. at 12-19.

Defendants Phoenix and Travelers filed a memorandum in opposition to plaintiff's motion for summary judgment on the issue of insurance.  ECF No. 40.  First, defendants assert that MCDA is not insured by Phoenix since it is not under the jurisdiction of the County Commission and since MCDA is not funded and operated as part of the County Commission's total operating budget.  Id. at 6-16.  Second, defendants argue that the doctrine of reasonable expectations does not afford coverage to MCDA under the County Commission's policy.  Id. at 16.  Specifically, defendants refer to plaintiff's complaint which alleges a claim based on promissory estoppel.  Id. at 19-20.  But, even if asserted correctly, defendant contends that MCDA has not met the elements under either estoppel or the reasonable expectations doctrine.  Id. at 20-25.

Plaintiff then filed a reply to defendants' response to plaintiff's motion for summary judgment on the issue of insurance. ECF No. 43.  First, plaintiff asserts that MCDA is under the jurisdiction of the County Commission and that it is funded by the County Commission; therefore, it qualifies as an insured under the

Policy.  Id. at 2-6.  Second, plaintiff asserts that defendants raised factual issues that preclude summary judgment.  Id. at 6-9.

By court order, counsel for the parties appeared before the Court to present oral argument on the fully briefed motions for summary judgment on March 22, 2019.  See ECF No. 44.

For the reasons set forth below, defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

## II.  Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere

allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party

opposing the motion.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

III.  Discussion

A.  MCDA is not an insured under the Public Entity Managment Liability Coverage Form of Phoenix's policy insuring the County Commission

In this case, plaintiff MCDA contends that it was entitled to indemnification and defense under an insurance policy issued by defendants.  The County Commission's Public Entity Management Liability Policy Coverage Form insuring agreement contains the following provisions:

SECTION I - PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE

1.  Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of loss to which this insurance applies.  We will have the right and duty to defend the insured against any claim or 'suit' seeking those damages.  However, we will have no duty to defend the insured against any claim or 'suit' seeking damages because of loss to which this insurance does not apply. We may, at our discretion, investigate any 'wrongful act' or claim and settle any claim or 'suit'.

b.  This insurance applies to loss only if:

(1)  The loss is caused by a 'wrongful act' committed while conducting duties by or on behalf of you or 'your boards';

(2)  The 'wrongful act' is committed in the 'coverage territory',

(3)  The 'wrongful act' was not committed before the Retroactive Date shown in the Declarations of

10

>           this Coverage Part or after the end
>           of the policy period; and
>
>           (4)  A claim or 'suit' by a person
>           or organization that seeks damages
>           because of the loss is first made or
>           brought  against  any  insured,  in
>           accordance with Paragraph c. below,
>           during  the  policy  period  or  any
>           Extended Reporting Period we provide
>           under   Section   VI   -   Extended
>           Reporting Periods.

ECF No. 37-4 at 2 (emphasis omitted).

> SECTION II - WHO IS AN INSURED
>
> 1.   If  you  are  designated  in  the  Common  Policy
> Declarations  as  a  pubic  entity,  you  are  an  insured.
> 'Your boards' are also insureds.  Your lawfully elected
> or appointed officials, 'executive officers' or directors
> are also insureds, but only with respect to their duties
> as  your  elected  or  appointed  officials,  'executive
> officers' or directors.
>
> 2.   Each of the following is also an insured:
>
>           a.   Your 'volunteer workers', but only while
>           performing  duties  related  to  the  conduct  of
>           your business, and your 'employees', but only
>           for acts within the scope of their employment
>           by you or while performing duties related to
>           the conduct of your business.
>
>           b.   Members of 'your boards', but only for
>           the conduct  of  their duties for you or for
>           'your boards'.  'Employees' of 'your boards'
>           are  also  insureds,  but  only  for  work  done
>           within the scope of their employment by 'your
>           boards',  or  their  performance  of  duties
>           related to the conduct of the operations of
>           'your boards'.
>
>           c.   Any legal representative of an insured
>           that has died, or become mentally incompetent,
>           insolvent or bankrupt, but only with respect
>           to duties as such.  That representative will
>           have all the rights and duties of such insured
>           under this Coverage Part.

3.   Any of your lawfully elected or appointed officials, 'executive officers', directors or 'employees', or any members of 'your boards', appointed at your request to serve with an outside tax exempt entity will be deemed to be acting within the scope of their duties for you.

Id. at 6.

"Your boards" is defined under the policy to mean:

36.  'Your boards':

a.   Means any board, commission, or other governmental unit or department that:

(1)  Is under your jurisdiction; *and*

(2)  Is funded and operated as part of your total operating budget.

Id. at 14 (emphasis added).

1.   Whether or not MCDA is funded and operated as part of the County Commission's total operating budget is unclear due to contract ambiguity

As stated above, the County Commission's Public Entity Management Liability Policy Coverage Form insuring agreement defines the term "board" as partly one that "[i]s funded and operated as part of your total operating budget." Id. When considering this term in light of the rest of the policy, the Court finds this provision ambiguous.

The phrase "is funded and operated as part of your total operating budget" is not defined by the policy and is reasonably susceptible to multiple meanings. To qualify under this provision, does MCDA have to receive direct funding from the County Commission? Or can the County Commission provide indirect funding to MCDA? Does MCDA have to be totally funded by the County

Commission or can it be partially funded?  Based upon the words of
the insurance policy alone, it is impossible for this Court to
determine what is meant by the phrase "is funded and operated as
part of your total operating budget."

Moreover, at oral argument, counsel for both parties indicated
that they have not found any case law, treatise, or other authority
to clarify the ambiguity in "funded and operated."

Therefore, the ambiguities in the policy's definition of "your
boards" with respect to "is funded and operated as part of your
total operating budget" creates a question of fact as to the
objectively reasonable expectations of the parties when the
insurance contract was entered into.  However, the next section of
this opinion explains why despite this ambiguity, this Court finds
MCDA is not an insured under the Public Entity Management Liability
Coverage Form of Phoenix's policy insuring the County Commission.

2.   MCDA is not "under the jurisdiction" of the County
Commission

Although the Public Entity Management Liability Policy
Coverage Form insuring agreement does not define "jurisdiction,"
the term should be given its plain, ordinary meaning, and the court
may turn to dictionary definitions for instruction.  Grand China
Buffett & Grill, Inc. v. State Auto Property & Casualty Company,
260 F. Supp. 3d 616, 624 (N.D. W. Va. 2017) (citing Syl. Pt. 9,
Nat'l Union Fire Ins. Co. of Pittsburgh v. Miller, 228 W. Va. 739,
724 S.E.2d 343, 352 (2012)).  Based on a review of multiple

reputable dictionaries, "jurisdiction" may be assigned the definition urged by the defendants.

According to Merriam-Webster's Dictionary, "jurisdiction" is defined as:

> 1: the power, right, or authority to interpret and apply the law . . .[,] 2a: the authority of a sovereign power to govern or legislate[,] b: the power or right to exercise authority . . .[,] 3: the limits or territory within which authority may be exercised.

M e r r i a m - W e b s t e r . c o m  2 0 1 9 , https://www.merriam-webster.com/dictionary/jurisdiction (27 February 2019). Black's Law Dictionary defines "jurisdiction" as:

> 1. A government's general power to exercise authority over all persons and things within its territory . . .[,] 2. A court's power to decide a case or issue a decree . . . [,] 3. A geographic area within which political or judicial authority may be exercised . . . [,] 4. A political or judicial subdivision within such an area . . .

*Jurisdiction*, Black's Law Dictionary (10th ed. 2014).

Although the defendants and the plaintiff look to different factors to determine whether or not MCDA falls under the jurisdiction of the County Commission, "jurisdiction" is not necessarily an ambiguous term if its ordinary meaning is otherwise clear. See Mylan Laboratories, Inc. v. Am. Motorists Ins. Co., 226 W. Va. 307, 700 S.E.2d 518, 529 (2010). "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. Pt. 4, Blake v. State Farm Mut. Auto. Ins. Co., 224 W. Va.

317, 685 S.E.2d 895 (2009) (citing Syl. Pt. 1, <u>Berkeley County Pub.</u>
<u>Serv. Dist. v. Vitro Corp. of America</u>, 152 W. Va. 252, 162 S.E.2d
189 (1968)). "A court, however, should read policy provisions to
avoid ambiguities and not torture the language to create them."
<u>Blake</u>, 224 W. Va. at 323, 685 S.E.2d at 901 (quoting <u>West Virginia</u>
<u>Ins. Co. v. Lambert</u>, 193 W. Va. 681, 458 S.E.2d 774 (1995)).

Turning to the facts of this case, West Virginia Code § 7-1-3
sets forth the jurisdiction of the County Commission.  That section
provides:

> The county commissions . . . shall have jurisdiction in
> all matters of probate, the appointment and qualification
> of personal representatives, guardians, committees,
> curators and the settlement of their accounts and in all
> matters relating to apprentices.  They shall also . . .
> have the superintendence and administration of the
> internal police and fiscal affairs of their counties,
> including the establishment and regulation of roads,
> ways, streets, avenues, drives and the like, and the
> naming or renaming thereof, in cooperation with local
> postal authorities, the division of highways and the
> directors of county emergency communications centers, to
> assure uniform, nonduplicative conversion of all rural
> routes to city-type addressing on a permanent basis,
> bridges, public landings, ferries and mills, with
> authority to lay and disburse the county levies.  They
> shall, in all cases of contest, judge of the election,
> qualification and returns of their own members, and of
> all county and district officers . . .

That particular section of the Code is titled "Jurisdiction,
powers, and duties[.]"  As counsel for the defendants correctly
indicated at oral argument, nowhere within § 7-1-3, <u>et seq.</u>, is
there any power or jurisdiction mentioned with respect to MCDA or
development authorities more generally.  Further, albeit the Code
references certain types of entities, commissions, and boards,

those entities are distinguished from development authorities in
that they are not legal entities, but rather are arms of the County
Commission.  Unlike those entities, MCDA is a public corporation,
created under West Virginia Code § 7-12-1.  Specifically, § 7-12-1
states:

> [T]he governing body of every municipality and the county
> commission of every county is hereby authorized to create
> and establish a public agency to be known as a
> development authority.  The name of the authority shall
> contain the words "development authority," together with
> the designation of the municipality or the county within
> which such authority is intended to operate . . . *any*
> *municipal development authority shall have the exclusive*
> *right to exercise its powers granted pursuant to this*
> *article within the boundaries of the municipality*.

(emphasis added).

Section 7-12-3 then provides:

> *The management and control of a county authority, its*
> *property, operations, business and affairs shall be*
> *lodged in a board* . . . who shall be appointed by the
> county commission and be known as members of the
> authority.  The county commission shall appoint one
> member to represent the county commission on the board
> and, for each municipality located within the county, the
> county commission shall appoint one member to represent
> the municipality . . .  If a member resigns, is removed
> or for any other reason his membership terminates during
> his term of office, a successor shall be appointed by the
> county commission to fill out the remainder of his term
> . . .  The county commission may at any time remove any
> member of the board by an order duly entered of record
> and may appoint a successor member for any member so
> removed.
>
> Other persons, firms, unincorporated associations, and
> corporations, who reside, maintain offices, or have
> economic interests . . . in the county, shall be eligible
> to participate in and request the county commission to
> appoint members to the development authority as the said
> authority shall by its bylaws provide.

(emphasis added).

16

Section 7-12-7 then lists various powers vested in MCDA, and § 7-12-8 specifically provides that:

> The authority may incur any proper indebtedness and issue any obligations and give any security therefor which it may deem necessary or advisable in connection with carrying out its purposes as hereinbefore mentioned. No statutory limitation with respect to the nature, or amount, interest rate or duration of indebtedness which may be incurred by municipalities or other public bodies shall apply to indebtedness of the authority. *No indebtedness of any nature of the authority shall constitute an indebtedness of the governing body of the municipality or county commission of the municipality or county in which the commission is intended to operate or any municipality situated therein, or a charge against any property of said county commission, municipalities, or other appointing agencies. The rights of creditors of the authority shall be solely against the authority as a corporate body and shall be satisfied only out of property held by it in its corporate capacity.*

(emphasis added).

Not only does MCDA have the "exclusive right to exercise its powers[,]" is accountable for its own debts, and controls its funds, but also the County Commission is not required to make any contribution to MCDA.  See W. Va. Code §§ 7-12-11 and 7-12-12.

First, despite the County Commission's authority to appoint and remove members of MCDA's board, this Court finds that such power to appoint and remove, which depending on whether the power of appointment or removal is sought to be used, could partly be shared by "[o]ther persons, firms, unincorporated associations, and corporations, who reside, maintain offices, or have economic interests . . . in the county[,]" is insufficient for the Court to find that MCDA falls within the jurisdiction of the County Commission.

17

Second, although MCDA is permitted to exercise the right of eminent domain if an order of the County Commission authorizes exercise of the right of eminent domain (see W. Va. Code § 7-12-7a), that statute does not necessarily permit the County Commission to manage and control MCDA. Management and control is vested in MCDA's board by statute and by MCDA's bylaws. See W. Va. Code § 7-12-3; ECF No. 35-7 at 2 ("Management and control of the Authority is lodged in a board of members").

Therefore, this Court finds that plaintiff MCDA is not an insured under the Public Entity Managment Liability Coverage Form of Phoenix's policy insuring the County Commission. Consequently, it is unnecessary for this Court to decide whether any exclusions are applicable and whether the defendants have waived any such exclusion.

B.  The doctrine of estoppel cannot extend insurance coverage to MCDA

In its complaint, MCDA stated that "Travelers made representations and promises to both [p]laintiff and the Monongalia County Commission that the Boards of the Monongalia County Commission would be covered under Traveler's Policy #ZLP-14T25627." ECF No. 1-2 at 12-13. It contends that it is entitled to relief because "Traveler's knew or should have known that [p]laintiff would reasonably rely on said representations and promise[,] [ ] [p]laintiff relied on Traveler's representations and promises to its detriment[, and] [ ] [p]laintiff has suffered losses because of its reliance on Traveler's representations and promises."

18

In <u>Potesta</u>, 202 W. Va. 308, 317, 504 S.E.2d 135 (emphasis omitted), the Supreme Court of Appeals stated:

> In order to rely on the doctrine of estoppel to prevent an insurer, who has previously stated one or more reasons for denying coverage, from asserting other, previously unarticulated reasons for denying coverage, the insured must prove that s/he was induced to act or refrain from acting to her/his reasonable reliance on the previously stated ground(s) for declination.

"Thus, in order to raise estoppel in the context of an insurance contract one must first be an insured, and also must have reasonably relied upon a representation of the insurer." <u>West Virginia Mut. Ins. Co. v. Vargas</u>, 933 F. Supp. 2d 847, 859 (N.D. W. Va. 2013).

To the extent MCDA argues that the Court may expand the coverage based on promissory estoppel, such an argument fails as a matter of law. "Generally, the principles of waiver and estoppel are inoperable to extend insurance coverage beyond the terms of an insurance contract." <u>Potesta</u>, 504 S.E.2d at 137. There are three exceptions to this general rule.

> Exceptions to the general rule that the doctrine of estoppel may not be used to extend insurance coverage beyond the terms of an insurance contract, include, but are not necessarily limited to, instances where an *insured* has been prejudiced because: (1) an insurer's, or its agent's, misrepresentation *made at the policy's inception* resulted in the *insured* being prohibited from procuring the coverage s/he desired; (2) an insurer has represented the *insured* without a reservation of rights; and (3) the insurer has acted in bad faith.

Syl. Pt. 7, <u>Potesta</u>, 202 W. Va. 308, 504 S.E.2d 135 (emphasis added).

These exceptions are inapplicable to MCDA since it is not an insured under defendants' policy. Here, it is the County Commission — not MCDA — that is insured. MCDA also cannot establish that it reasonably relied on any representations of defendants regarding coverage. The alleged representations occurred after the issuance of the policy and cannot give rise to an estoppel claim. ECF No. 35-12 at 5-6. Moreover, any representations that occurred prior to issuance of the policy were not by defendants' agents.[3] Id.; ECF No. 35-8 at 55-60. Therefore, this Court finds that the doctrine of estoppel cannot extend insurance coverage to MCDA.

C.   <u>The doctrine of reasonable expectations does not afford coverage to MCDA under the County Commission's policy</u>

MCDA asserts that it is entitled to coverage based on the doctrine of reasonable expectations since "both the Monongalia County Commission and the MCDA had a reasonable expectation of coverage under the Policy. This expectation was fostered by agents of the [d]efendants." ECF No. 38 at 16-18. Plaintiff further contends that "the County Commission made multiple representations to the MCDA of that fact." Id. at 18.

Typically, the doctrine of reasonable expectations is applied in circumstances where the policy language is ambiguous. <u>Jenkins</u>

_____

[3]Defendants indicate that MCDA was insured under a separate policy with Travelers for almost 15 years on a building that it owned, located on Hartman Run Road. <u>See</u> ECF No. 35-16. However, MCDA's coverage with Travelers on that building is not relevant for determining whether or not MCDA reasonably relied on representations of defendants regarding coverage.

v. State Farm Mut. Auto. Ins. Co., 632 S.E.2d 346, 352 (W. Va. 2006). However, "[t]he West Virginia Supreme Court has held that the language of an insurance policy need not be ambiguous to trigger the doctrine of reasonable expectations." Essex Ins. Co. v. Neely, No. 5:04CV139, 2008 WL 619194 *6 (N.D. W. Va. Mar. 4, 2008) (citing Romano v. New England Mut. Life Ins. Co., 362 S.E.2d 334 (W. Va. 1987); Keller v. First Nat'l Bank, 403 S.E.2d 424 (W. Va. 1991)). American Equity Ins. Co. v. Lignetics, Inc., 284 F. Supp. 2d 399, 405 (N.D. W. Va. 2003). "[T]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though a painstaking study of the policy provisions would have negated those expectations." Syl Pt. 6, New Hampshire Ins. Co. v. RRK, Inc., 736 S.E.2d 52 (W. Va. 2012) (quoting Syl. Pt. 8, Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc., 356 S.E.2d 488 (1987), overruled on other ground by Potesta v. U.S. Fid. & Guar. Co., 504 S.E.2d 135 (1998)). Under West Virginia law, the doctrine of reasonable expectations may apply "in situations where . . . there is a misconception about the insurance purchased." For example, the doctrine may apply when "a policy provision on which denial of coverage is based differs from the prior representations made to the insured by the insurer." New Hampshire Ins. Co., 736 S.E.2d at 58.

"However, merely raising the defense of reasonable expectations is insufficient to survive a motion for summary

judgment. The nonmoving party must demonstrate the existence of a genuine issue of material fact." Essex, No. 5:04CV139, 2008 WL 619194 *6 (N.D. W. Va. Mar. 4, 2008). Here, plaintiff must show that a genuine issue of material fact exists relating to the argument that defendants created a misconception about the insurance policy coverage that the County Commission purchased.

In support of its claim that the reasonable expectations doctrine does not apply to the facts of this case, defendants point to the testimony of Eldon Callen, who served on the County Commission from 2011 through 2016. ECF No. 40 at 20-22. Mr. Callen stated that he could not say with certainty whether any of Travelers representatives ever made any representation concerning whether MCDA would be covered under Travelers policy insuring the County Commission. ECF No. 40-4 at 32. Mr. Callen stated that he does not recall whether prior to the SouthCo suit being filed, any representations were made by Mr. Horton that MCDA would be covered as an insured under the County Commission's policy with Travelers. Id. at 55. He further stated Fred Horton of Dyer did not make any representations to him about MCDA coverage under Travelers policy. Id. at 32-35. Defendants assert that Mr. Callen's testimony shows that he had concluded that MCDA was covered on his own accord. ECF No. 40 at 20-21. Defendants further note that plaintiff has not provided any information in its responses to discovery that would show representations made by Phoenix or its authorized agent at the

policy's inception that MCDA was insured as a "board" under the County Commission's policy. Id. at 22-23.

Plaintiff also points to Mr. Callen's testimony and specifically references a portion of his testimony that states he did not understand the type of insurance the County Commission had through Travelers. ECF No. 38 at 17. Plaintiff references the following portion of Mr. Callen's deposition:

> Q. Were there any sort of bid packages that the County Commission was provided?
>
> A. In my recollection, there was. But I remember specifically questioning in great detail that the coverages were complete and all the entities were covered.
>
> Q. What entities are you referring to?
>
> A. The Development Authority specifically, and all the other things that were to be covered that were — to my knowledge, was all part of the County.

Id. at 17. Plaintiff explains that Mr. Callen stated that his belief predated his term on the County Commission and that Mr. Callen asked insurers whether "everything is covered" during a work session/bid process related to the County Commission's possible purchase of insurance, which took place in late 2014 or 2015. Id.; ECF No. 43 at 7-8.

This Court believes that Mr. Callen's conclusion that he thought MCDA would be covered under the County Commission's policy seems to be based upon his own assumptions and beliefs about coverage and MCDA's relation to the County Commission rather than on any reasonable expectations created by the words or conduct of

defendants' agents or other representatives.  Consequently, this Court concludes that the doctrine of reasonable expectations does not apply in this case.

## IV.  <u>Conclusion</u>

For the reasons set forth above, defendants' motion for summary judgment (ECF No. 35) is GRANTED and plaintiff's motion for summary judgment (ECF No. 37) is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    March 27, 2019

<u>/s/ Frederick P. Stamp, Jr. </u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE